LOURIE, Circuit Judge.
 

 Clemment B. Epps appeals from the decision of the Court of Veterans Appeals affirming the denial of Epps’s claim for compensation for service-related injuries. Because the Court of Veterans Appeals did not err in its interpretation of 38 U.S.C. § 5107(a) (1994), we affirm.
 

 BACKGROUND
 

 Epps served on active duty in the United States Army from 1961 to 1964. In 1969, the Department of Veterans Affairs (DVA) determined that his dermatitis of the hands and feet was service-connected and it rated the dermatitis at 10% disabling. In 1991, Epps requested an increase in the disability rating, asserting that he had developed a heart condition as a result of his service-connected dermatitis. After a medical examination, the DVA concluded that Epps’s heart condition was not related to his military service and accordingly denied Epps’s request.
 

 Epps then appealed to the Board of Veterans’ Appeals.
 
 See
 
 38 U.S.C. § 7105 (1994). Before the board issued its decision, a hearing was held pursuant to DVA Circular 20-89-11 (Mar. 26, 1990) (“Hearing Officer program” or “Circular”), which sets forth procedures for “post decisional” hearings on DVA benefits issues. At the request of the hearing officer, Epps underwent another physical examination. The examining physician reported that Epps had a heart murmur, but that there was no evidence of a link between Epps’s skin condition and any cardiovascular effects. Based on this report, the DVA again denied Epps’s claim.
 

 The Board of Veterans’ Appeals, upon
 
 de novo
 
 review, found Epps’s claim to be “well grounded” under 38 U.S.C. § 5107(a) (1994). The board found that, because Epps had filed a “well grounded” claim, according to § 5107(a), the DVA had a duty to assist Epps in the development of his claim. However, the board also found that the DVA had adequately assisted Epps, and therefore was not in violation of § 5107(a). Finding the evidence of causation between Epps’s skin condition and his heart condition inadequate, the board denied Epps’s claim. Epps appealed to the Court of Veterans Appeals.
 
 See
 
 38 U.S.C. § 7252(a) (1994).
 

 On appeal to that court, Epps argued that the DVA failed to assist him pursuant to § 5107(a) because it failed to inform him of the type of evidence needed to render his heart condition claim “well grounded.” Epps also argued that the hearing conducted pursuant to the Circular was “invalid” because,
 
 inter alia,
 
 the Circular was neither published in the Federal Register nor subject to public comment pursuant to statutory and regulatory procedures.
 
 See
 
 5 U.S.C. § 552 (1994)
 
 [1]
 
 ;
 
 *1466
 
 5 C.F.R. § 1.12 (1996)
 
 [2]
 
 .
 

 The court concluded that the lack of any competent medical evidence of a nexus between Epps’s service-connected skin condition and his heart condition rendered his claim not “well grounded.”
 
 Epps v. Brown,
 
 9 Vet.App. 341, 344 (Ct.Vet.App.1996). Accordingly, the court concluded that the board erred in proceeding to the merits of his claim, but that this error was nonprejudicial under § 5107(a) because the DVA in fact adequately assisted Epps by informing him that his claim was denied because of a lack of medical evidence of causation.
 
 Id.
 
 The court noted that the “notice and comment” requirements of the statute and regulation were not violated because the Circular did not contain “substantive” rules.
 
 Id.
 
 at 345-47. The court also noted that the Circular did not appear to operate to Epps’s detriment because it provided Epps with an additional opportunity to be heard, and that the hearing officer had exceeded the legal requirements imposed on the DVA by § 5107(a) when he ordered another medical examination and further assisted Epps in developing his claim, even though Epps had not submitted a “well grounded” claim.
 
 Id.
 
 at 346. However, the court declined to further consider Epps’s attack on the Circular in light of its determination that Epps’s claim was not “well grounded.”
 
 Id.
 
 at 347. Epps now appeals to this court.
 

 DISCUSSION
 

 Our jurisdiction to review a decision of the Court of Veterans Appeals is limited by statute:
 

 After a decision of the United States Court of Veterans Appeals is entered in a case, any party to the case may obtain review of the decision with respect to the validity of any statute or regulation ... or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court- in making the decision.
 

 38 U.S.C. § 7292(a) (1994);
 
 see also id.
 
 § 7292(c), (d) (vesting jurisdiction over review of Court of Veterans Appeals’ decisions in this court and setting certain standards for review);
 
 Fugere v. Derwinski,
 
 972 F.2d 331, 334 (Fed.Cir.1992). Our jurisdiction does not extend to challenges either to factual determinations or to the law as applied to the facts of a particular case. 38 U.S.C. § 7292(d)(2).
 

 As a preliminary matter, the DVA argues that this court lacks the authority to review the Court of Veterans Appeals’ construction of 38 U.S.C. § 5107(a) (1994). Epps has argued that the court erred in interpreting § 5107(a) to require the DVA to assist a veteran in developing a service-connected claim only after the submission of a “well grounded” claim. More specifically, Epps argues that § 5107(a) should be construed to provide for unconditional assistance to veterans, and that whether a claim is “well grounded” is relevant only to the question
 
 *1467
 
 whether a claim should ultimately be allowed after development of the claim.
 

 In arguing that we lack jurisdiction, the DVA notes that the Court of Veterans Appeals has determined that Epps’s claim is not “well grounded,” and that, in any event, he was provided with adequate assistance from the DVA. Therefore, the DVA argues that, even under Epps’s proposed construction of § 5107(a), we can only affirm, because the court has determined that Epps was adequately assisted, a factual conclusion not reviewable by this court under 38 U.S.C. § 7292(d)(2). In effect, the DVA argues that Epps’s appeal is moot.
 
 See Lewis v. Continental Bank Corp.,
 
 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1989) (“Article III denies federal courts the power to decide questions that cannot affect the rights of the litigants in the case before them.”) (citations and internal quotations omitted).
 

 We do not agree that we lack jurisdiction to interpret the chronological relationship between a “well grounded” claim and the duty to provide assistance set forth in § 5107(a). Our jurisdictional statute authorizes us to review the “validity of any statute or regulation ... or any interpretation thereof ... that was relied on by the Court [of Veterans Appeals] in making its decision.” 38 U.S.C. § 7292(a). The question raised is one of interpretation of a statute. Even though there has been a determination by the Court of Veterans Appeals which we may not be able to review, and which, no matter how we resolve the legal issue presented, causes Epps to lose his appeal, we are entitled to decide all issues properly raised before us because we are not the court of last resort.
 
 See Cardinal Chem. Co. v. Morton Int'l Inc.,
 
 508 U.S. 83, 97, 113 S.Ct. 1967, 1975, 124 L.Ed.2d 1 (1993). In the event of Supreme Court review, it would be desirable that the Court have our decision on the important legal issue of the construction of § 5107(a) which needs to be resolved. We consider it an alternative ground of affirmance of the Court of Veterans Appeals.
 
 See id.
 
 at 98, 113 S.Ct. at 1975 (“The Federal Circuit’s decision to rely on one of two possible alternative grounds ... did not strip it of
 
 power
 
 to decide the second question, particularly when its decree was subject to review by this court.”) (emphasis in original). Therefore, the appeal is not moot and we do not lack jurisdiction to review the court’s construction of § 5107(a).
 

 We now proceed to the merits. The construction of a statute is a legal question that we review
 
 de novo. Smith v. Brown,
 
 35 F.3d 1516, 1517 (Fed.Cir.1994).
 

 Section 5107 provides in relevant part:
 

 (a) [A] person who submits a claim for benefits under a law administered by the Secretary [of Veterans Affairs] shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded. The Secretary shall assist such a claimant in developing the facts pertinent to the claim____
 

 (b) When, after consideration of all evidence and material of record in a case before the Department [of Veterans Affairs] with respect to benefits under laws administered by the Secretary, there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. Nothing in this subsection shall be construed as shifting from the claimant to the Secretary the burden specified in subsection (a) of this section.
 

 38 U.S.C. § 5107 (1994).
 

 As previously noted, Epps argues that DVA assistance under § 5107(a) is not conditioned upon the submission of a “well grounded” claim. According to Epps, whether a claim is “well grounded” is relevant only to the question whether benefits will ultimately be allowed after consideration of all the evidence, including that which the DVA is unconditionally obligated to help develop. In support of his argument, Epps points to the legislative history of § 5107 and argues that Congress intended to codify regulations 38 C.F.R. §§ 3.102,
 
 [3]
 
 
 *1468
 
 3.103
 
 [4]
 
 (1996), which, according to Epps, embody the DVA’s long-standing practice of providing unconditional assistance to veterans in claim development, and which clarify the meaning and impact of the term “well grounded claim.” Epps also notes that the Court of Veterans Appeals’ interpretation of § 5107(a) produces an anomalous result, because only those claimants who do not need DVA assistance
 
 {i.e.,
 
 those with “well grounded” claims) would be entitled to DVA assistance.
 

 The DVA argues that the Court of Veterans Appeals’ construction of § 5107 is correct, that DVA assistance in claim development is conditional upon the submission of a “well grounded” claim. The DVA notes that the phrase “such a claimant” in the last sentence of § 5107(a) (as quoted above) refers to a claimant who has met the threshold of submitting a “well grounded” claim. The DVA also notes that the structure of § 5107 makes it clear that the claimant’s initial burden to submit a “well grounded” claim under § 5107(a) is separate from the standards governing the ultimate determination of claim allowability under § 5107(b). The DVA further notes that the legislative history of § 5107 does not clearly support Epps’s construction and, if anything, supports the DVA’s construction.
 

 We agree with the DVA and conclude that the court did not err in its interpretation of § 5107(a). The first sentence of § 5107(a) specifies that a claimant “shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded.” As noted by the court, a “well grounded” claim is:
 

 [A] plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of § 5107(a). For a claim to be well grounded, there must be (1) a medical diagnosis of a current disability; (2) medical, or in certain circumstances, lay evidence of in[-]service occurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between an in-service [disease or injury] and the current disability. Where the determinative issue involves medical causation, competent medical evidence to the effect that the claim is plausible is required.
 

 Epps,
 
 9 Vet.App. at 343-44 (citations and quotations omitted). We adopt this definition as one that properly expresses the meaning of the statute.
 
 See Woodson v. Brown,
 
 87 F.3d 1304, 1305, 1307 (Fed.Cir.1996) (approving of the Court of Veterans Appeals’ application of, but not expressly adopting, the above quoted definition of “well grounded” claim for purposes of § 5107(a)).
 

 The second sentence of § 5107(a) requires the DVA to assist
 
 “such a claimant
 
 in developing the facts pertinent to the claim.” (emphasis added). We interpret the underlined phrase to have its antecedent basis in the sentence preceding it, and thereby attribute significance to the chronology of the sentences.
 
 See Ingersoll-Rand Co. v. McClendon,
 
 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990) (“To discern Congress’ intent we examine the explicit statutory language and the structure and purpose of the statute.”). “[S]ueh a claimant” refers to the claimant who has
 
 first
 
 met its burden of
 
 *1469
 
 submitting a “well grounded” claim. Thus, under § 5107(a), the DVA has a duty to assist only those claimants who have established “well grounded” (ie., plausible) claims.
 
 See Woodson,
 
 87 F.3d at 1305, 1307.
 

 Furthermore, our construction of § 5107(a) does not, as Epps suggests, produce the anomalous result that only those claimants that do not need DVA assistance would be entitled to assistance under § 5107(a). As properly construed, claimants who are entitled to DVA assistance under § 5107(a) (ie., those submitting plausible claims) may need DVA’s assistance to ultimately prove the allowability of their claims under § 5107(b) (if, for example, the evidence for and against the claim is nearly in balance). A “well grounded” claim as initially submitted under § 5107(a) is not necessarily a claim which will ultimately be deemed allowable under § 5107(b). It is, as the Court of Veterans Appeals held, a plausible claim, properly supported with evidence.
 

 Moreover, the last sentence of § 5107(b) makes it clear that a claimant’s § 5107(a) burden to submit evidence sufficient to establish a “well grounded” claim is the claimant’s alone. Contrary to Epps’s argument, the statute indicates that giving the benefit of the doubt to a claimant does not relieve the claimant of carrying the burden of establishing a “well grounded” claim. In summary, there is nothing in the text of § 5107 to suggest that the DVA has a duty to assist a claimant until the claimant meets his or her burden of establishing a “well grounded” claim.
 

 We have reviewed those portions of the legislative history of § 5107 that both parties argue clearly manifest Congressional intent in support of their respective constructions of that section. However, we find that none of the cited excerpts speaks clearly to the statutory construction task at hand. We therefore hold that § 5107(a) requires a claimant to submit and establish a “well grounded” claim before the DVA is required to provide assistance to a claimant in developing the facts underlying his or her claim. The Court of Veterans Appeals correctly construed the statute.
 

 Epps further argues that his hearing held pursuant to the DVA Circular was procedurally and substantively invalid because the DVA did not publish the Circular in the Federal Register pursuant to 5 U.S.C. § 552(a)(1) (1994) or follow “notice and comment” procedures pursuant to 38 C.F.R. § 1.12 (1996). In response, the DVA argues that the Circular does not impose substantive rules and therefore does not require publication in the Federal Register. The DVA further argues that the Circular is not subject to the DVA’s “notice and comment” procedures because it is not “proposed regulatory development,” but instead merely provides procedural instructions to DVA personnel.
 

 The Court of Veterans Appeals noted that “it would appear that the Circular did not warrant publication and a notice and comment period because the [Hearing Officer] program does not ‘narrowly limit’ administrative action or have the ‘force of law[,]’ ” and therefore was not a substantive rule.
 
 Epps,
 
 9 Vet.App. at 346 (citations omitted). The court also noted that “the [Hearing Officer] program broadens administrative action by affording claimants an additional opportunity to be heard” with respect to their claims.
 
 [5]
 

 Id.
 
 However, the court was clear that “it would be inappropriate for the Court to enter any definitive rulings regarding the alleged infirmities with the [Hearing Officer] program in general, and with the hearing afforded [Epps] in particular” given its conclusion that Epps had not submitted a “well grounded” claim.
 
 Id.
 
 at 347. Accordingly, the court declined to further consider Epps’s “attack” on the Circular.
 
 Id.
 

 We may review a Court of Veterans Appeals’ decision with respect to the validity of
 
 *1470
 
 a statute or regulation or any interpretation thereof if the validity of that statute or regulation was relied on by that court in making its decision. . 38 U.S.C. § 7292(a) (1994) (quoted
 
 supra).
 
 However, it is clear that, while it commented on the Circular, the court did not decide the validity of the Circular or rely on its interpretation in rendering its decision against Epps; its discussion concerning the validity of the Circular and Epps’s hearing under it was therefore dictum. We will therefore not review this issue. We have considered all the other arguments made by Epps, but find them to be unpersuasive.
 

 The Court of Veterans Appeals did not err in its construction of 38 U.S.C § 5107(a). Pursuant to 38 U.S.C § 7292(a), we will not review Epps’s argument that DVA Circular 20-89-11 is invalid because that issue was not decided or relied on by the court. Accordingly, the decision of the Court of Veterans Appeals is
 

 CONCLUSION
 

 AFFIRMED.
 

 [1]
 

 . 5 U.S.C. § 552 (1994) provides in relevant part:
 

 (a) Each agency shall make available to the public information as follows:
 

 (1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—
 

 (D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency[.]
 

 Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner he required to resort to, or be adversely affected by, a
 
 *1466
 
 matter required to be published in the Federal Register and not so published.
 

 (2) Each agency, in accordance with published rules, shall make available for public inspection and copying—
 

 (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; and
 

 (C) administrative staff manuals and instructions to staff that affect a member of the public.
 

 [2]
 

 . 38 C.F.R. § 1.12 (1996) provides in relevant part:
 

 It is the policy of the Department of Veterans Affairs to afford the public general notice, published in the Federal Register, of proposed regulatory development, and an opportunity to participate in the regulatory development in accordance with the provisions of the Administrative Procedure Act (APA)____ Exceptions to
 

 the policy of permitting public participation in the regulatory development may be authorized by the Secretary or one of the Secretary’s deputies if adequately justified and concurred in by the General Counsel. Such exceptions, unless public comment is required by statute, may be recommended when:
 

 (a) The proposed regulations consist of interpretive rules, general statements of policy, or rules of Department of Veterans Affairs organization, procedure or practice, or
 

 (b) When the Department of Veterans Affairs for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.
 

 [3]
 

 . 38 C.F.R. § 3.102 (1995) provides in relevant part:
 

 It is the defined and consistently applied policy of the Department of Veterans Affairs to administer the law under a broad interpretation, consistent with the facts shown in every case. When, after careful consideration of all procurable and assembled data, a reasonable doubt
 
 *1468
 
 arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. By reasonable doubt is meant one which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. It is a substantial doubt and one within the range of probability as distinguished from pure speculation or remote possibility. It is not a means of reconciling actual conflict or a contradiction in the evidence; the claimant is required to submit evidence sufficient to justify a belief in a fair and impartial mind that the claim is well grounded. Mere suspicion or doubt as to the truth of any statements submitted, as distinguished from impeachment or contradiction by evidence or known facts, is not [a] justifiable basis for denying the application of the reasonable doubt doctrine if the entire, complete record warrants invoking the doctrine....
 

 [4]
 

 . 38 C.F.R. § 3.103 (1995) provides in relevant part:
 

 (a) Statement of policy.... Proceedings before the VA are ex parte in nature, and it is the obligation of VA to assist a claimant in developing the facts pertinent to the claim and to render a decision which grants every benefit that can be supported in law while protecting the interests of the government. The provisions of this section apply to all claims for benefits and relief, and decisions thereon....
 

 [5]
 

 . The Circular provides for DVA post-decisional hearings. Circular 20-89-11, ¶ 2(a)(1) (Mar. 26, 1990). This is in addition to appeal rights to the Board of Veterans Appeals. Under ¶ 2(c)(4), the paragraph applicable to Epps, when Epps filed his appeal with the board, the hearing officer retained authority to amend his decision after holding the hearing if Epps provided the hearing officer with "new and material evidence." Therefore, the Circular in this case provided Epps with an additional mechanism for procuring a favorable review of his claim. It did not, as Epps contends, impose a substantive requirement on Epps to produce "new and material evidence.” Nor did it interfere with Epps’s right to
 
 de novo
 
 review at the Board of Veterans Appeals.